[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 121.]

**REYNOLDS ET AL., APPELLEES, *v*. GOLL, APPELLANT.**

**[Cite as *Reynolds v. Goll*, 1996-Ohio-153.]**

*Juvenile court—Custody proceeding under R.C. 2151.23—Custody awarded to nonparent—Court's finding of abandonment and unsuitability supported by competent evident—Best interests of child—R.C. 3109.04.*

(No. 94-1464—Submitted December 5, 1995—Decided March 4, 1996.)

APPEAL from the Court of Appeals for Lorain County, No. 91CA005140.

_____

{¶ 1} This case involves the custody dispute of Diana Katherine Goll, now age eleven, between her biological father, Robert Goll, defendant-appellant, and plaintiffs-appellees, Paul A. and Virginia L. Reynolds, who have cared for Diana almost since her birth. The circumstances leading to this dispute are as follows. Shortly after Diana was born, on September 5, 1984, her mother became ill and was diagnosed with cancer. Her father had difficulty coping with his wife's illness as well as caring for Diana and her three siblings, then ages fourteen, twelve and seven. At the time, Mr. Goll worked at St. Joseph's Hospital as a security officer and as a part-time police officer for the Vermilion Police Department. Virginia Reynolds, an RN who worked with Goll at the hospital, offered to help care for Diana. Mr. Goll accepted this offer and Diana was placed with Mr. and Mrs. Reynolds when she was just one week old. Diana was initially cared for by the Reynoldses on weekends and by another couple during the week. However, due to the other couple's marital problems, the Reynoldses took full-time responsibility of Diana in December 1984.

{¶ 2} Diana's mother died on March 17, 1986. Prior to her mother's death, Diana visited her biological family just three times: during the Christmas holidays in 1984, in February 1985, and in March 1985. Just prior to her death, on February

1, 1986, Diana's mother asked Mrs. Reynolds whether she and her husband would raise Diana. Mrs. Reynolds told Mr. Goll she was willing to do this. Mr. Goll agreed to have the Reynolds care for Diana. However, according to Mr. Goll, he viewed this as a temporary arrangement.

{¶ 3} Nevertheless, from the time of Diana's mother's death in March 1986 until at least the commencement of this custody proceeding in July 1989, Mr. Goll visited with Diana only five times. For the first eight months following the death of his wife, Mr. Goll had virtually no contact with Diana. The first contact he had with Diana was in November 1986, when he remarried and requested that Diana attend the wedding. Mr. Goll, who states that he attempted to visit Diana more often but was told by the Reynoldses that Diana was unavailable, concedes that he only tried to visit her three additional times but was turned down. He also concedes that he never phoned Diana. Although Mr. Goll provided medical insurance for Diana, he never offered the Reynoldses any other financial support for Diana. He also allowed the Reynoldses to claim Diana as an exemption for income-tax purposes.

{¶ 4} At one point, Mrs. Reynolds told Mr. Goll that she and her husband wanted to adopt Diana. However, she did not further pursue it because Mr. Goll indicated that he might want Diana back and she feared losing Diana. Instead, the Reynoldses brought this custody action, pursuant to R.C. 2151.23, in July 1989. The trial court set up a temporary visitation schedule, which it appears Mr. Goll adhered to. The court also appointed a guardian *ad litem* who issued a report indicating that Mr. Goll had forfeited his rights to Diana through abandonment. The guardian *ad litem* concluded that it is in the best interests of the child that she remain with the Reynoldses subject to liberal visitation by Mr. Goll.

{¶ 5} Following a two-day trial, the court issued findings of fact and conclusions of law and awarded custody of Diana to the Reynoldses. The court of appeals reversed and remanded on the ground that the trial court incorrectly applied

the "best interest" test without also considering the suitability of the natural parent. On remand, the court, by agreement of the parties, reconsidered the evidence already presented and issued new findings of fact and conclusions of law. The court found that Mr. Goll is unsuitable on the ground that he abandoned his child by his lack of interest in her. Furthermore, the court found that based upon the testimony of the psychologist, an award of Diana's custody to the natural father would be detrimental to her best interests. The court of appeals affirmed.

{¶ 6} The cause is now before this court upon allowance of a discretionary appeal.

_____

*Thomas H. Sanborn,* for appellant.

*Douglas M. Brill*, for appellees.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 7} Appellant, the biological father of Diana Goll, challenges the trial court's award of custody of his daughter to Paul and Virginia Reynolds. For the reasons that follow, we find that the trial court was warranted in its grant of custody of the minor to the Reynoldses. Consequently, we affirm the court of appeals.

{¶ 8} At the outset, we note that this case is limited to a child custody dispute initiated in juvenile court pursuant to R.C. 2151.23 between biological parents and non-biological "parents." In such a proceeding, we have long recognized that "the welfare of the minor is first to be considered." *Clark v. Bayer* (1877), 32 Ohio St. 299, 310. We have further stated that parents who are deemed suitable are considered to have the "paramount" right to custody of their minor children. *In re Perales* (1977), 52 Ohio St.2d 89, 97, 6 O.O.3d 293, 297, 369 N.E.2d 1047, 1051-1052. However, in balancing the interests of both the parent and child, the right of custody by the biological parents is not absolute and can be forfeited. Thus, "parents may be denied custody only if the preponderance of the

evidence indicates abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is otherwise unsuitable--that is, an award of custody would be detrimental to the child." *Id.* at 98, 6 O.O.3d at 297, 369 N.E.2d at 1052. The trial court here determined that appellant, through lack of interest, abandoned his daughter and was unsuitable. It then held that it is in the minor's best interests that she remain with appellees rather than be turned over to her father. The court of appeals upheld the trial court's decision.

{¶ 9} Appellant argues that the placement of his daughter with appellees during a time of need does not constitute abandonment and should not render him an unsuitable parent. Whether a parent relinquishes rights to custody is a factual determination to be made by the trier of fact and should not be disturbed if supported by some reliable, credible evidence. *Masitto v. Masitto* (1986), 22 Ohio St.3d 63, 66, 22 OBR 81, 83, 488 N.E.2d 857, 860.

{¶ 10} In this case, the trial court's finding of abandonment and unsuitability was supported by competent evidence. The trial court heard extensive testimony over the course of a two-day trial. Both sides presented several witnesses on their behalf. While we recognize that appellant was initially placed in a very difficult position of trying to cope with the illness and ultimate death of his wife, we nonetheless believe that there was evidence to support the trial court's determination that appellant, through his course of conduct, abandoned his daughter. In reaching this decision, we are mindful of the fact that the trial court, after carefully listening to the testimony of the parties and witnesses, is in the best position to judge their credibility and to determine whether a parent has abandoned his or her child. Thus, we adhere to the established rule that "[i]n proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important." *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 483, 106 N.E.2d 772, 774. As we stated in *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846, 849:

"The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 483, 106 N.E.2d 772, 774. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276."

{¶ 11} Not only was there evidence to support the finding of abandonment and unsuitability of appellant, but there was also evidence to support the trial court's decision that it is in the best interests of Diana, age eleven, to remain with appellees. The guardian *ad litem*, court investigator and the psychologist, all of whom testified in this case, agreed that appellees, who have cared for Diana since she was one week old, should be granted custody. They also acknowledged that appellant should be granted liberal visitation. In determining the best interests of the minor, under R.C. 3109.04(C) as it was in effect at the time, the trial court acted within its discretion by awarding custody to appellees.

{¶ 12} Accordingly, the judgment of the court of appeals is affirmed and the cause remanded to the trial court for further proceedings to determine a visitation schedule.

*Judgment affirmed.*

MOYER, C.J., WRIGHT, RESNICK, PFEIFER and CHRISTLEY, JJ., concur.

DOUGLAS, J., not participating.

JUDITH A. CHRISTLEY, J., of the Eleventh Appellate District, sitting for COOK, J.

_____