OPINION
{¶ 1} Appellant, Shannon Price, appeals a decision of the Clinton County Court of Common Pleas granting custody of her son, Dakota Beireis, to appellee, Karen Williams, his paternal grandmother. We affirm the decision of the trial court.
 {¶ 2} Matthew Beireis and Shannon Price are the parents of Dakota, born September 12, 1998. Matthew and Shannon lived together sporadically from the time of Dakota's birth until June 2000. They had a tumultuous relationship, marked by instability and allegations of domestic violence. Matthew has a criminal history which indicates drug and alcohol abuse problems. During this time, Dakota resided primarily with his mother. However, due in part to her work schedule, he spent a substantial amount of time in the care of both his maternal and paternal grandmothers.
 {¶ 3} Matthew and Shannon ended their relationship in April 2000. In a juvenile court proceeding, they entered into a shared parenting agreement which designated both as Dakota's residential parents. The shared parenting plan was apparently never followed, and Dakota was "shuffled" between his two grandmothers and his mother. During this time Shannon would leave Dakota with one or the other of his grandmothers, sometimes for days at a time, without any indication when she would return for him or where she could be contacted. While Matthew saw Dakota frequently during this time, there is no indication that he was ever independently responsible for Dakota's care.
 {¶ 4} From mid-April 2001 until December 2001, Dakota remained in the exclusive care of Karen Williams, his paternal grandmother. Shannon did not see or communicate with Dakota at all during this period. Shannon maintained that she did call, but that her phone messages were not returned. Meanwhile Karen maintained that she did not hear from Shannon at all during this period. Shannon further maintained that she attempted to seek legal advice by meeting with eight different attorneys; however, she did not retain any of the attorneys, nor did she pursue any legal remedy. On December 3, 2001, Shannon, accompanied by police, picked up Dakota from his day care center.
 {¶ 5} On December 12, 2001, Karen filed a motion to intervene in the custody matter, a motion for emergency temporary custody of Dakota, and a motion for custody of Dakota. Shannon and Matthew subsequently each filed motions seeking custody of Dakota. Karen's motion to intervene was granted, and the trial court held a hearing on the matter which consumed seven and one-half days. The parties presented numerous exhibits and the court heard testimony from 34 individuals. At the conclusion of the hearing, the trial court awarded custody to Karen, and granted liberal visitation to Shannon. Matthew was awarded visitation to be arranged between him and his mother. Shannon appeals, raising three assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "The trial court erred to the prejudice of Mother-appellant when it granted custody of the child to paternal grandmother."
 {¶ 8} In her first assignment of error, Shannon alleges that the trial court "clearly abused its discretion in failing to make a finding of unsuitability. Specifically, the trial court erred in finding that the natural mother was unsuitable because she abandoned the child."
 {¶ 9} "The overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children." In re Hockstock, 98 Ohio St.3d 238, 2002-Ohio-7208, at ¶ 16, citing Santosky v. Kramer (1982), 455 U.S. 745, 753,102 S.Ct. 1388; In re Murray (1990), 52 Ohio St.3d 155, 157. Ohio courts have sought to effectuate the fundamental rights of parents by severely limiting the circumstances under which the state may deny parents the custody of their children. See In rePerales (1977), 52 Ohio St.2d 89, syllabus. Consequently, in a child custody proceeding between a parent and nonparent, a juvenile court may not award custody to the nonparent "without first determining that a preponderance of the evidence shows that the parent abandoned the child; contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimenal to the child." Id.
 {¶ 10} If a court concludes that any one of these circumstances describes the conduct of a parent, the parent may be adjudged unsuitable, and the state may infringe upon the fundamental parental liberty interest of child custody. Id. Whether a parent relinquishes rights to custody is a factual determination to be made by the trier of fact and should not be disturbed if supported by some reliable, credible evidence.Masitto v. Masitto (1986), 22 Ohio St.3d 63, 66. "The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Reynolds v. Goll,75 Ohio St.3d 121, 124, 1996-Ohio-153, quoting Miller v. Miller (1988),37 Ohio St.3d 71, 74. In this regard, "the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." Id.
 {¶ 11} In the present case, the trial court found that Matthew had contractually relinquished custody of Dakota to his mother. No challenge is made as to this finding. The trial court further found, by a preponderance of the evidence, that Shannon abandoned Dakota when she left him in the care of his grandmother for a period of more than seven months. The trial court found no credible evidence that she attempted to visit or communicate with the child at all during this period. Such a prolonged failure to support, care for, or communicate with the child may constitute an abandonment. See In re Holycross (Feb. 24, 1999), Seneca App. No. 13-98-60. As noted above, abandonment of a child is adequate grounds to find a natural parent unsuitable.
 {¶ 12} There is no doubt that over the course of the seven-day trial in this matter, conflicting testimony was provided as to the efforts Shannon made to communicate with her son during this time. Shannon alleges that the trial court erred in weighing the conflicting evidence related to the unsuitability finding. However, the resolution of this conflicting evidence was a matter for the trial court. The trial court's decision carefully discusses the evidence and testimony presented, and explains which testimony the court found more credible. The trial court is in the best position to evaluate evidence and assess the credibility of witnesses, and this court should not second guess its judgment. See Wei v. Shen, Butler App. No. CA2002-12-300, 2003-Ohio-6253, at ¶ 27, citing Schneider v. Schneider (Mar. 29, 1999), Brown App. Nos. CA98-03-007 and CA98-03-009;Ostendorf-Morris Co. v. Slyman (1982), 6 Ohio App.3d 46, 47.
 {¶ 13} Shannon also alleges that the trial court erred in finding that it was in Dakota's best interest that he be placed in Karen's custody. With regard to Dakota's best interest, the trial court's decision also carefully reviews the evidence and resolves the conflicts in the testimony. The trial court heard testimony from a counselor and a psychologist who both concluded that it was in Dakota's best interest that Karen be awarded custody, while the guardian ad litem concluded that Shannon should be given custody. The trial court's decision makes findings related to Dakota's best interest, and examines the evidence which supports those findings. Again, we note that the resolution of any conflicting evidence was a matter for the trial court to determine.
 {¶ 14} Our careful review of the record reveals that the trial court's decision is supported by credible evidence. Accordingly, we overrule the first assignment of error.
 {¶ 15} Assignment of Error No. 2:
 {¶ 16} "The trial court erred to the prejudice of appellant when it admitted certain documents into evidence."
 {¶ 17} The admission or exclusion of any relevant, material evidence is solely within the sound discretion of the trial court. In re Brown (2001), 142 Ohio App.3d 193, 197. Therefore, appellate review is limited to determining whether the trial court abused its discretion. Id.; In re Mraz, Brown App. Nos. CA2002-05-011 and CA2002-07-014, 2002-Ohio-7278. The term "abuse of discretion" connotes a judgment that is rendered with an unreasonable, arbitrary, or unconscionable attitude. Id., citingCedar Bay Constr., Inc. v. Fremont (1990), 50 Ohio St.3d 19,22.
 {¶ 18} In her second assignment of error, Shannon alleges that the trial court should not have admitted into evidence the two reports prepared by a court-ordered psychologist and Dakota's counselor, because she was not provided with the reports prior to trial. She alleges that she was prejudiced by their admission since she did not have adequate time to prepare a cross-examination of the authors.
 {¶ 19} First, Shannon challenges the admission of the report of Dr. William Kennedy, a psychologist appointed by the court to prepare evaluations of the parties. Dr. Kennedy's report was faxed to the court on the morning of the first day of trial. Upon receiving the report, Shannon's counsel objected to its admission, arguing that she was unprepared to cross-examine Dr. Kennedy as she had had no opportunity to review his report. The trial court inquired how long counsel required to read the report and prepare her cross-examination. Counsel responded, "45 minutes, please." The parties then agreed that Dr. Kennedy would not be questioned until after the day's lunch break, which was in fact an hour and a half long.
 {¶ 20} All the parties to the action were aware that the trial court ordered the evaluation, and were equally aware that the report would be entered into evidence; neither side had access to it before the other. Shannon's attorney was provided with an opportunity to review the report before its author was questioned and agreed that she was given enough time to prepare her cross-examination. Shannon was thus not prejudiced by its admission, and the trial court did not abuse its discretion by allowing this report into evidence.
 {¶ 21} Second, Shannon challenges the admission of the report prepared by Karen McGrath, a counselor who had worked with Dakota. She again alleges that her counsel had inadequate time to prepare a cross-examination. Counsel failed to object to this report at the trial, and in fact stipulated that it would be entered into evidence. Shannon has consequently waived any error related to the admission of this report into evidence. See In reWashburn (1990), 70 Ohio App.3d 178, 182. The second assignment of error is overruled.
 {¶ 22} Assignment of Error No. 3:
 {¶ 23} "The trial court erred to the prejudice of appellant when it relied on a supposedly false affidavit even though the court had already ruled that the mistakes were not material or misleading."
 {¶ 24} In her final assignment of error, Shannon alleges that the trial court erred by "relying" on an affidavit she signed, which contained false statements. The trial court had found in an earlier proceeding that, "notwithstanding the errors, the affidavit [was] not materially misleading to the court." In its final decision, the trial court, when considering the credibility of Shannon's testimony, noted that she "testified that she observed a couple of errors in the affidavit at the time she swore to its truthfulness, but * * * she did not appreciate the implications."
 {¶ 25} As noted earlier, it is the trial court's duty to determine the credibility of witnesses, and the weight to be given the evidence and testimony. The trier of fact's decision in this regard is owed deference since the trier of fact is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80. To the extent that the trial court "relied" on Shannon's affidavit when determining the credibility of her testimony, the court was simply executing its duty to determine the credibility of the witnesses before it.
 {¶ 26} Shannon also alleges that the trial court erred by finding Karen Williams' testimony to be credible, pointing out inconsistencies in her testimony. Once again, we reiterate that the trial court is charged with determining the credibility of witnesses. Review of the record reveals no abuse of discretion in the weight and credibility determinations made by the trial court. Consequently, the third assignment of error is overruled.
 {¶ 27} Judgment affirmed.
Young, P.J., and Powell, J., concur.