JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} A.G., [1] Mother, appeals the October 23, 2008 judgment of the trial court granting permanent custody of her minor child, S.G., to the Cuyahoga County Department of Children and Family Services ("CCDCFS").[2] We affirm.
 {¶ 2} S.G. was born on June 13, 2005. On December 29, 2005, CCDCFS removed the child from Mother's home and filed a complaint alleging that he was neglected and dependent. A January 18, 2006 case plan was implemented, with the goal of reunification. The case plan was directed at addressing the following areas of concern: substance abuse, basic needs, physical education, domestic relations, and family violence.
 {¶ 3} On February 23, 2006, the trial court found the child to be neglected and dependent, and committed him to the temporary custody of CCDCFS. In October 2007, CCDCFS filed a motion to modify its temporary custody of S.G. to permanent custody. A hearing on the motion for permanent custody was held on July 15, 2008.
 {¶ 4} At the hearing, CCDCFS social worker Mary Helen Daniels described Mother's progress on her case plan as "minimal." In particular, *Page 4 
Daniels noted the following in regard to Mother's progress: (1) she did not follow through with two previous referrals for a mental health evaluation; (2) she had a history of positive urine screens, the last one being on September 20, 2007; (3) she initially went to one domestic violence counseling session, but was subsequently dismissed for noncompliance. She tried a second time, but did not complete the last class; (4) she was two classes away from completing parenting classes when she was discharged; (5) her parent advocate noted she was consistently in an intoxicated state and stopped coming after the third visit in October 2007; and (6) she went to one "Help Me Grow" appointment. Her case was closed in November 2007 because of noncompliance.
 {¶ 5} Daniels further testified that Mother had not consistently visited S.G., and had not shown an ability to maintain a permanent, safe, and appropriate home for the child. According to Daniels, S.G. was "very bonded with the foster family," and the family expressed a desire to adopt the child. Daniels was of the opinion that granting CCDCFS permanent custody was in the child's best interest.
 {¶ 6} Marya Simmons, a chemical dependency counselor at the Hitchcock Center for Women where Mother was living, testified on Mother's behalf. Simmons had been working with Mother after Mother completed a 90-day residential treatment program in May 2008. According to Simmons, Mother was "doing very well. She's participating, she's attending all necessary classes, she's *Page 5 
been self-sufficient in finding and seeking her own employment after completing the job readiness program, and she wants to actively be involved with her children."
 {¶ 7} Mother also testified. She described how she obtained employment on her own. She admitted to testing positive for opiates in September 2007 when she was pregnant with another child, but testified that, as of the hearing, she had been drug free for six months. Mother further testified that she had hepatitis, but did not know how serious it was, and had not had any medical follow-up on the condition since February or March of 2008. Mother also testified that she had stopped taking medication for depression, and had not had any follow-up treatment for her depression since about December 2007. She admitted that she had not been making court-ordered child support payments for S.G.
 {¶ 8} Attorney Dale Hartman, S.G.'s guardian ad litem ("GAL"), told the court that, although Mother was doing well at the Hitchcock Center, he had "great concern" about her ability to care for herself and S.G. once she was on her own and, therefore, recommended that CCDCFS be granted permanent custody.
 {¶ 9} Mother raises two assignments of error for our review. In the first, she contends that the trial court erred to her prejudice in finding that the child could not be returned to her within a reasonable period of time. In her second *Page 6 
assignment, Mother contends that the trial court erred to her prejudice because its decision was not in the best interests of the child. The two assignments of error are interrelated and will be considered together.
 {¶ 10} Our review of a custody determination by the juvenile court begins with the recognition that the court's exercise of discretion should be accorded "the utmost respect," taking into account that "the knowledge gained through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." In re Campbell (Oct. 12, 2000), Cuyahoga App. Nos. 77552 and 77603, citing Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124,1996-Ohio-153, 661 N.E.2d 1008; see, also, In re Awkal (1994),95 Ohio App.3d 309, 316, 642 N.E.2d 424. "A court exercising Juvenile Court jurisdiction is invested with very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment." In re Pieper Children (1993), 85 Ohio App.3d 318, 330,619 N.E.2d 1059.
 {¶ 11} R.C. 2151.414 provides in pertinent part as follows:
 {¶ 12} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply: *Page 7 
 {¶ 13} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 14} "(b) The child is abandoned.
 {¶ 15} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 16} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 17} The court found "[p]ursuant to R.C. 2151.414, *** that the allegations of the motion have been proven by clear and convincing evidence." As discussed below, the record supports the court's finding.
 {¶ 18} S.G. was removed from Mother's home on December 29, 2005. On February 23, 2006, the trial court found the child to be neglected and dependent, and committed the child to the temporary custody of CCDCFS. R.C. 2151.414 provides that "[f]or the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of *Page 8 
the date the child is adjudicated [neglected and dependent] or the date that is sixty days after the removal of the child from the home." Thus, S.G. was considered to have entered CCDCFS's custody on February 23, 2006, and accordingly, at the time of trial on July 15, 2008, the child had been in temporary custody for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d).
 {¶ 19} Mother argues that she remedied the problems that initially caused the child to be placed outside the home and, therefore, the trial court's finding that the child could not or should not be placed with her within a reasonable period of time was not supported by the record (i.e., R.C. 2151.414(B)(1)(a)). For a trial court to grant permanent custody under R.C. 2151.414(B)(1), however, the court must find that, in addition to permanent custody being in the best interests of the child, only one of the factors set forth in sections (a) through (d) apply. As already discussed, section (d) applied. Section (a) did not apply because it requires that the child had "not been in the temporary custody *** for twelve or more months of a consecutive twenty-two month period[,]" a circumstance that did not exist here. (Emphasis added.)[3] *Page 9 
 {¶ 20} Notwithstanding the above, there was ample evidence before the trial court that S.G. could not be placed with Mother within a reasonable period of time or should not be placed with Mother. R.C. 2151.414(E) provides in relevant part:
 {¶ 21} "(E) In determining at a hearing *** whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, *** that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 22} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of *Page 10 
changing parental conduct to allow them to resume and maintain parental duties;
 {¶ 23} "(2) Chronic mental illness, chronic emotional illness, *** or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing ***;
 {¶ 24} "***
 {¶ 25} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 26} "***
 {¶ 27} "(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections."
 {¶ 28} The court found that reasonable efforts were made by CCDCFS to reunify Mother and child, but that "[r]elevant services provided to the family *** were not successful." The court further found that "the chemical dependency of the mother is so severe that it makes the mother unable to provide an adequate *Page 11 
permanent home for the child at the present time and, as anticipated, within one year." The record supports the court's determinations.
 {¶ 29} In particular, the record shows that despite the fact that temporary custody was twice continued (i.e., extensions were granted in December 2006 and June 2007) to give Mother time to complete her case plan, Mother had not followed through to completion with referrals that were made as part of her case plan, including: a mental health evaluation, domestic violence counseling, parenting classes, meetings with her parent advocate, and "Help Me Grow" appointments. See R.C. 2151.414(E)(1). Further, the record shows that Mother had a chronic mental illness and chemical dependency issue that, at the time of the final hearing, were not resolved.[4] See R.C. 2151.414(E)(2).
 {¶ 30} The record also shows that during the three-year period S.G. had been in foster care, Mother twice failed to visit or maintain contact with him for significant periods of time (i.e., from July 2006 through January 2007 and from October 2007 through February 2008). See R.C. 2151.414(E)(4). The record further demonstrates that Mother had her parental rights terminated as to three of her other four children. See R.C. 2151.414(E)(11). *Page 12 
 {¶ 31} In light of the above, there was sufficient evidence that S.G. could not be placed with Mother within a reasonable period of time.
 {¶ 32} Because one of the factors in R.C. 2151.414(B)(1)(a)-(d) applied, the trial court could then go on to determine, by clear and convincing evidence, that permanent custody was in the best interest of the child by considering all relevant factors, including those listed in R.C. 2151.414(D). Those factors include:
 {¶ 33} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 34} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 35} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 36} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; *Page 13 
 {¶ 37} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 38} After considering the factors set forth in R.C. 2151.414(D), the trial court found "by clear and convincing evidence that a grant of permanent custody is in the best interests of the child ***."
 {¶ 39} Mother essentially argues that she and S.G. had a good relationship and, therefore, granting permanent custody to CCDCFS was not in his best interest. Although there was evidence that Mother and the child had a good relationship, "a good relationship with the child is not enough-a child's best interest requires permanency and a safe and secure environment." In re Holyak (July 12, 2001), Cuyahoga App. No. 78890. The record demonstrates that on the date of the permanent custody hearing, S.G. had been living with his foster family for three years. See R.C. 2151.414(D)(3). For nearly one year of those three years, Mother had failed to visit or maintain contact with the child. According to the GAL, S.G. appeared to identify more with the foster family than with his biological parents, and the foster family desired to adopt him. See R.C. 2151.414(D)(1) and (2). Finally, the record demonstrates that Mother had her parental rights terminated as to three of her other four children. See R.C. 2151.414(D)(5), referring to R.C. 2151.414(E)(11).
 {¶ 40} On this record, the trial court did not abuse its discretion. Mother's two assignments of error are overruled. *Page 14 
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., and JAMES J. SWEENEY, J., CONCUR.
[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.
[2] Father's parental rights were also terminated; he has not appealed.
[3] See, also, In re: C.N., Cuyahoga App. No. 81813, 2003-Ohio-2048, holding that when a child is in the temporary custody of a children services agency for 12 months of a consecutive 22-month period, the trial court need not make a determination of whether the parent has remedied the conditions which caused the removal of the child. Id. at ¶ 24.
[4] We recognize Simmons' testimony about how well Mother was doing at the Hitchcock Center, but we note that Simmons only began working with Mother in May 2008, and Mother had only completed the Center's treatment program on July 14, 2008, the day before the final hearing. Further, Mother had not addressed her mental health issue since December 2007. *Page 1