[Cite as *In re G.N.C.*, 2014-Ohio-3092.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: G.N.C., | : | JUDGES: |
| A MINOR CHILD | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 13-CA-112 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | OPINION |

CHARACTER OF PROCEEDING:      Civil appeal from the Licking County Court of Common Pleas,Juvenile Division, Case No. G2012-0720

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      July 10, 2014

APPEARANCES:

PATRICK HUGHES
Adam Jones Law Firm
1635 N. Waterfront Parkway, St. 200
Wichita, KS

MELINDA G. SEEDS
Box 958
195 E. Broad Street
Pataskala, OH 43062

MARK D. PANEPINTO
955 National Road
Wheeling, WV 26003

SHEENA SJOSTRAND-POST
Sjostrand-Post Law Firm, LLC
Box 93
Newark, OH 43058

*Gwin, P.J.*

**{¶1}** Defendant-appellant David A. Carr ["Carr"] appeals from a judgment of the Licking County Common Pleas Court, Juvenile Division, awarding custody of Carr's child ["G.N.C."] to the child's maternal grandparents, John and Sharon Giannaris, Sr.

*Facts and Procedural History*

**{¶2}** Nicole Hoder and Carr were never married, but had a child, G.N.C. together on September 1, 1999. G.N.C. and her mother have been residents of Licking County, Ohio since June 2000. Carr is a lifelong resident of West Virginia. Pursuant to an Agreed Parenting Plan filed August 28, 2009, *In Re The Marriage/Children of: Nicole Hoder and David Carr,* Family Court of Marshall County, West Virginia, Civil Action No. 02-D-203, Nicole was designated the custodian and primary residential parent of G.N.C. *See also,* 4T. Nov. 19, 2012 at 12.

**{¶3}** The maternal grandparents, the Giannaris', have been the primary physical custodians of the minor child since November of 2010 when their daughter, Nicole, and the minor child came to live with them. Nicole was subsequently diagnosed with cancer and required treatment for that disease. Tragically, Nicole died on October 31, 2012 because of the cancer. Grandparents filed a complaint seeking custody of G.N.C. on November 2, 2012. An evidentiary hearing commenced on May 15, 2013, continued on May 16, 2013 and concluded on May 20, 2013.

**{¶4}** The evidence presented at the hearing disclosed that Carr has never been married. Nevertheless, he has two children: a son, David Carr, Jr., age 18, who resides with his mother; and G.N.C., the child who is the subject of this custody proceeding.

{¶5} Carr filed for bankruptcy in June 2000. By the end of that year, his girlfriend, Heidi Twaddle, moved in with him. She is thirty-two (32) years old. Twaddle is gainfully employed and assists in financially supporting him. The couple has lived together for thirteen years. They testified that they intend to get married.

{¶6} Carr is permanently disabled and has not worked in approximately six years. He receives Social Security Disability. He testified that he has diabetes, neuropathy, back and shoulder problems, high blood pressure and considerable nerve pain in the feet and hands. He also suffers from "some depression". He takes numerous daily medications. From time to time, he also uses a cane. Carr has received $1,200 per month in Social Security Disability payments beginning in 2009. Carr has never contributed financially to any of G.N.C. medical costs or extracurricular activities. Over the years, he has not regularly and consistently maintained contact with G.N.C. and has attended few, if any, of G.N.C.'s activities or functions.

{¶7} G.N.C. lived with her maternal grandparents from age nine months to age of five or six. From age five or six (2004/2005) she and her mother resided in Millersport, Ohio with the mother's boyfriend, next door to the boyfriend's mother, Terry Crane. G.N.C. and her mother came back to her grandparents' home in 2010. G.N.C. has cognitive and emotional difficulties. She receives her special education and treatment services in the community where the grandparents live.

{¶8} G.N.C. told her guardian ad litem and the Licking County Children Services social worker, Tonya McAlear, that she was afraid of her father, that he easily became angry, and that when angry he would hit or kick her. Gabby testified similarly to what the guardian ad litem had reported.

{¶9} The guardian ad litem filed a seventeen-page report setting forth her findings and recommendations. The report recommends that the child remain in the home of the maternal grandparents, and that they be designated the residential custodians.

{¶10} Following three days of evidence, the trial court issued a judgment entry on October 14, 2013 finding Carr to be an unsuitable parent and awarding custody of G.N.C. to the maternal grandparents.

*Assignments of Error*

{¶11} Carr purports to raise three assignments of error,

{¶12} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW, AND ABUSED ITS DISCRETION, IF THERE IS ANY DISCRETION IN THIS MATTER, IN AWARDING CUSTODY TO THE MATERNAL GRANDMOTHER, SHARON GIANNARIS AND STEP-GRANDFATHER, JOHN GIANNARIS, SR., WHERE, AS HERE, THE FATHER WHO WANTS CUSTODY OF HIS DAUGHTER, IS NOT UNFIT, AND THE TRIAL COURT DID NOT MAKE A SPECIFIC FINDING AS TO WHAT "DETRIMENT" THE CHILD WOULD SUFFER AS A RESULT OF CUSTODY WITH HER FATHER.

{¶13} "II. THE TRIAL COURT ABUSED ITS DISCRETION, COMMITTED REVERSIBLE ERROR, AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN REFUSING TO AWARD CUSTODY OF THE MINOR CHILD TO HER FATHER AS THE EVIDENCE DID NOT SUPPORT A FINDING THAT FATHER WAS UNFIT.

{¶14} "III. THE "DETRIMENT TO THE CHILD" PRONG OF *IN RE PERALES* IS UNCONSTITUTIONAL BOTH ON ITS FACE AND AS APPLIED TO THE FACTS OF

THIS CASE WHEN SUPPORTED BY A FINDING OF DETRIMENT DUE TO CHILD RELOCATION AND NOT SUFFICIENT FITNESS ISSUES RELATIVE TO PARENTS WHO DESIRE THE RIGHT TO EXERCISE THEIR FUNDAMENTAL RIGHT TO RAISE THEIR CHILDREN."

### A. Deficiency in Carr's appellate brief.

{¶15} Carr has set forth three assignments of error. However, we note a deficiency in Carr's appellate brief; it does not comply with App.R.16 (A)(7), which provides,

> The appellant shall include in its brief, under the headings and in the order indicated, all of the following: * * * An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

{¶16}  According to App.R. 12(A)(2):

> The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).

{¶17} An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. *Hawley v. Ritley*, 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393(1988); *Abon, Ltd. v. Transcontinental Ins. Co.*, 5th Dist. Richand No. 2004-CA-0029, 2005 WL

1414486, ¶100; *State v. Miller*, 5th Dist. Ashland No. 04-COA-003, 2004-Ohio-4636, ¶41.

**{¶18}** In the case at bar, Carr has wholly failed to separately brief his three assignments of error. However, in the interests of justice, we shall attempt to consider Carr's assignments of error.

I, II

**{¶19}** Because we find the issues raised in Carr's first and second assignments of error are closely related, for ease of discussion, we shall address the assignments of error together.

**{¶20}** Carr argues the trial court's judgment was against the manifest weight and sufficiency of the evidence. In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997) *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355 is also applicable in civil cases. *Eastley*, 132 Ohio St.3d. A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." Id. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a

reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley*, supra, 2012–Ohio–2179, 132 Ohio St.3d 328, 972 N.E.2d 517.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

### B. The Parent's Paramount Right to Custody

{¶21} Since *Meyer v. Nebraska,* 262 U.S. 390, 399, 401–03, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), the United States Supreme Court has recognized the fundamental liberty interest of parents in the custody, care and control of their children. The right to raise one's child is regarded as essential and fundamental. *See In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990). "[I]t has been deemed 'cardinal' that the custody, care and nurture of the child reside, first, in the parents." Id., *quoting Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645(1944). The United States Supreme Court, in *Troxel v. Granville*, 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147

L.Ed.2d 49(2000), held that a parent has a fundamental right to make decisions concerning his or her children. Courts have therefore "sought to effectuate the fundamental rights of parents by severely limiting the circumstances under which the state may deny parents the custody of their children." *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, at ¶ 17, *citing In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047, at syllabus.

**{¶22}** The case at bar is a child custody dispute initiated in juvenile court pursuant to R.C. 2151.23 between biological father and the maternal grandparents. This is not a case in which the court was asked to permanently terminate the rights of the parent. In such a proceeding, courts have long recognized that "the welfare of the minor is first to be considered." *Clark v. Bayer*, 32 Ohio St. 299, 310, 1877 WL 120(1877); *Reynolds v. Goll*, 75 Ohio St.3d 121,123 1996-Ohio-153, 661 N.E.2d 1008. The Ohio Supreme Court has further stated that parents who are deemed suitable are considered to have the "paramount" right to custody of their minor children. *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047(1977).

**{¶23}** Accordingly, "in a child custody proceeding [under R.C. 2151.23(A)(2)] between a parent and nonparent, a court may not award custody to the nonparent 'without first determining that a preponderance of the evidence shows that the parent abandoned the child; contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child.' [*Perales* at syllabus.] If a court concludes that any one of these circumstances describes the conduct of a parent, the parent may be adjudged unsuitable, and the state may infringe upon the fundamental

parental liberty interest of child custody." *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 17; See *also*, *In re B.P.*, 191 Ohio App.3d 518, 2010-Ohio-6458, 946 N.E.2d 818(4th Dist. 2010), ¶42.

**{¶24}** Thus, pursuant to R.C. 2151.23 we review the record under a manifest-weight-of-the-evidence standard to see whether competent, credible evidence supports the trial court's finding of unsuitability. See *In re B.P.*, 191 Ohio App.3d 518 at ¶44 citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578(1978); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24; and *State v. Schiebel*, 55 Ohio St.3d 71, 74–75, 564 N.E.2d 54(1990). *See, also, Reynolds v. Goll*, 75 Ohio St.3d at 124, 1996-Ohio-153, 661 N.E.2d 1008 ("In this case, the trial court's finding of abandonment and unsuitability was supported by competent evidence.")

**{¶25}** The detriment that supports a finding of unsuitability can include the "emotional and psychological (as well as physical and mental) effect which a custody award may have on a child." *In re Perales,* 369 N.E.2d at 1052, fn. 11

**{¶26}** In this case, the trial court's finding of unsuitability was supported by competent evidence.

**{¶27}** In the case at bar, the evidence supports that Carr has been an uninvolved father, showed no insight at all into almost any aspect of G.N.C.'s life, and has anger problems that the trial court found support at least some of the instances of physical and emotional mistreatment alleged by G.N.C. When asked why he wanted custody of G.N.C., Carr could give no reason beyond saying that custody was his right. G.N.C.'s teachers and the neighbor/ mother of her mother's ex-boyfriend, each testified

that upon returning from visits with Carr, G.N.C. was withdrawn and took several days to return to normal, long before there was ever a custody battle brewing.

{¶28} The trial court made it clear that it was considering such evidence "with regard to the suitability issue of the father, whether or not he can meet her special needs, her special circumstances. And so for the record I want to make it very clear by that best interests is not controlling here, suitability is controlling." (1T. at 162-163.)

{¶29} G.N.C. is integrated into the Ohio community where she has long lived, is integrated into her school, has good and established relationships with doctors, therapists, and counselors in her current placement; is frightened of her father; and clearly wishes to remain in her grandparents' custody. After a thorough review, the guardian ad litem recommended that the Giannaris' have custody.

{¶30} In reaching this decision, we are mindful of the fact that the trial court, after carefully listening to the testimony of the parties and witnesses, is in the best position to judge their credibility and to determine whether a parent is unsuitable, i.e. that an award of custody to the parent would be detrimental to the child.. Thus, we adhere to the established rule that "[i]n proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important." *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772, 774(1952); *Reynolds v. Goll*, 75 Ohio St.3d at 125, 1996-Ohio-153, 661 N.E.2d 1008. As the Ohio Supreme Court has observed,

> The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties

concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 483, 106 N.E.2d 772, 774. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. *See Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276.

*Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846, 849(1988); *Reynolds v. Goll*, 75 Ohio St.3d at 125, 1996-Ohio-153, 661 N.E.2d 1008.

**{¶31}** Upon review of the extensive testimony and professional reports in this matter, we conclude the trial court did not abuse its discretion in concluding Carr is an unsuitable parent based on the evidence that an award of custody to him would be detrimental to G.N.C.

**{¶32}** Carr's first and second assignments of error are overruled.

III.

**{¶33}** Through his third assignment of error, Carr raises a constitutional challenge that he did not raise in the trial court. Carr has failed to cite any portion of the transcript or record where he argued the issue he now attempts to raise.

**{¶34}** The federal courts have discussed the problems resulting when a party omits important information in its appellate brief noting;"[c]ourts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw

through the assembled discovery material. 'Judges are not like pigs, hunting for truffles buried in the record.'" *Albrechtson v. Bd. Of Regents*, 309 F.2d 433(7th Cir 2002), quoting *United State v. Dunkel*, 927, 955, 956(7th Cir. 1991). Our own Supreme Court has noted:

> The omission of page references to the relevant portions of the record that support the brief's factual assertions is most troubling. Appellate attorneys should not expect the court 'to peruse the record without the help of pinpoint citations' to the record. *Day v. N. Indiana Pub. Serv. Corp.* (C.A.7, 1999), 164 F.3d 382, 384 (imposing a public reprimand and a $500 fine on an attorney for repeated noncompliance with court rules). In the absence of the page references that S.Ct.Prac.R. VI(2)(B)(3) requires, the court is forced to spend much more time hunting through the record to confirm even the most minor factual details to decide the case and prepare an opinion. That burden ought to fall on the parties rather than the court, for the parties are presumably familiar with the record and should be able to readily identify in their briefs where each relevant fact can be verified.

*State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees,* 108 Ohio St.3d 288, 2006-Ohio-903, ¶13; *See also,* State *v. Davis*, 5th Dist. Licking No. 2007-CA-00104, 2008-Ohio-2418, ¶91.

{¶35} It is fundamental that this Court need not consider a constitutional argument that is raised for the first time on appeal. *Atkinson v. Grumman Ohio Corp.*, 37 Ohio St.3d 80, 82(1988); *State v. Awan*, 22 Ohio St.3d 120, 122-123, 489 N.E.2d

277(1986); *In re T.K.,* 9th Dist. Wayne No. 03CA0006, 2003-Ohio-2634, ¶20; *Snyder v. City of Fairborn*, 2nd Dist Greene No. 2001 CA 107, 2002-Ohio-3569 at *9; *State v. Tebbe*, 6th Dist. Lucas No. L-94-239, 1995 WL 283949(May 12, 1995).

**{¶36}** In any event, the trial court explicitly found Carr to be unsuitable as required by the Ohio Supreme Court before the trial court gave any consideration to the best interest of the child. *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971; *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047(1977). In addition, Carr's has not been permanently divested of his parental rights.

**{¶37}** Carr's third assignment of error is overruled.

**{¶38}** For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Juvenile Division, Licking County, Ohio, is hereby affirmed.

By Gwin, P.J.,

Farmer, J., and

Delaney, J., concur