[Cite as *S.R. v. T.A.(R.)*, 2015-Ohio-5322.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| S. R., | : | Case No. 15CA9 |
| Plaintiff-Appellant, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| T. A.(R.), et al., | : | |
| Defendants-Appellees. | : | **RELEASED: 12/14/2015** |

_____

<u>APPEARANCES</u>:

Claire M. Ball, Jr., Athens, Ohio, and David J. Winkelmann, Millfield, Ohio, for Appellant.

John W. Judkins, Greenfield, Ohio, for Appellee.

_____

Harsha, J.

{¶1}   Stacy R. appeals the juvenile court's decision dismissing her custody action on the grounds that she failed to present sufficient evidence that T. A., the biological mother of the child, is an unsuitable parent.

{¶2}   Stacy R. contends that the juvenile court abused its discretion in awarding custody of the child, C.R., to the mother because Stacy R. presented evidence that the mother had a record of indifference towards the child and had a criminal record. Stacy R. also argues that mother's living arrangements and lack of financial or personal stability further show that the court abused its discretion in granting her custody. However, our review of the record shows that the juvenile court properly considered the evidence presented by all the witnesses, which included testimony about the mother's parenting efforts, her ongoing voluntary drug counseling, her residence with C.R.'s grandmother and other family members, and her employment income. The juvenile

court did not abuse its discretion in awarding custody of C.R. to the mother. We affirm the juvenile court's judgment.

## I. FACTS

**{¶3}**   T. A. and B. R. are C.R.'s biological parents but divorced in 2008 when C.R. was an infant.  Mother had custody of C.R. and they resided with Stacy R., mother's friend, from March 2008 until June 2014.  Mother also resided with the maternal grandmother during some of that time period while C.R. remained with Stacy R.  Additionally, C.R. resided with his paternal grandparents beginning in the summer of 2008 for about six months.  In June 2014, father B. R. petitioned for and received custody of C.R. and mother was given supervised visitation rights. However, father died a few months later and mother and Stacy R. went to Indiana where father had been living to bring C.R. back to Ohio. Shortly thereafter Stacy R. obtained temporary custody of C.R. and filed a complaint for custody the following month alleging that mother was an unsuitable parent. C.R.'s paternal aunt, and his paternal grandfather, also sought custody and, alternatively, companionship time.

**{¶4}**   After a hearing to determine whether mother was unsuitable to raise her child, the juvenile court found that the parties requesting custody failed to prove by the preponderance of the evidence that mother is an unsuitable parent. Specifically, the court found that mother has a home in which to care for her child and income sufficient to support him. She has completed a drug counseling program, has passed every drug test, and voluntarily continues to engage in group counseling.  Terry, C.R.'s paternal aunt, testified that C.R. is very excited to see his mother and her only concern with mother's parenting ability was the potential for possible drug relapse. Because the court

found that the parties seeking custody failed to prove by a preponderance of the evidence that mother is an unsuitable parent, it overruled and dismissed Stacy R.'s and the paternal aunt and grandfather's custody requests.[1] Stacy R. appealed.

## II. ASSIGNMENT OF ERROR

{¶5} Stacy R. raises one assignment of error for our review:

1. The Juvenile Court Abused Its Discretion in Awarding Custody of [C.R.] to Stacy (sic) [Mother, T.A.].

## III. LAW AND ANALYSIS

### A. Standard of Review

{¶6} A trial court has broad discretion in determining custody matters. *Reynolds v. Goll*, 75 Ohio St.3d 121, 124, 661 N.E.2d 1008 (1996). Consequently, we can sustain a challenge to a trial court's custody decision only upon a finding that the trial court abused its discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). An abuse of discretion is an unreasonable, arbitrary, or unconscionable use of discretion, i.e., a view or action that no conscientious judge could honestly have taken. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67; *State v. Gavin*, 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996, ¶ 20. When applying an abuse-of-discretion standard, we are not free to merely substitute our judgment for that of the trial court. *In re Jane Doe 1*, 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991). A deferential review in a child-custody case is appropriate because much may be evident in the parties' demeanor and attitude that does not translate to the record well. *Davis,* 77 Ohio St.3d at 419, 674 N.E.2d 1159.

---

[1] The juvenile court dismissed the paternal aunt and grandfather's companionship time claims for lack of subject matter jurisdiction.

### B. Custody Disputes Involving Nonparent

{¶7}   It is undisputed that the right of a parent to raise her own child is an essential and basic civil right. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Thus, natural parents have a paramount right, as against third parties, to custody of their children. *Murray, supra*; *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877). This right, however, is not absolute. *See In re Kovaleski,* 4th Dist. Washington No. 05CA12, 2006–Ohio–317, 2006 WL 199549, at ¶ 14, citing *In re Johnson*, 4th Dist. Ross No. 94CA2003, 1995 WL 146064 (Mar. 29, 1995). In a custody proceeding under R.C. 2151.23(A)(2) between a parent and a nonparent, the court may not award custody to the nonparent without first determining that the parent is unsuitable to raise the child, i.e., without determining by a preponderance of the evidence that the parent abandoned the child or contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child. *In re Perales*, 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047 (1977) , at syllabus. If a trial court's "unsuitability" finding is based on detriment to the child, the court must measure suitability in terms of the harmful effect on the child, not in terms of society's judgment of the parent. *In re Dunn*, 79 Ohio App.3d 268, 271, 607 N.E.2d 81, 3rd Dist. (1992), citing *Perales* at ¶ 98.

### C.  Evidence on the Issue of Unsuitability

{¶8}   Stacy R. has the burden to establish by the preponderance of the evidence that mother is an unsuitable parent.  *In re Z.A.P.,* 2008-Ohio-3701, 894 N.E.2d 342 (4th Dist.).  Mother and maternal grandmother testified that mother lives in a four

bedroom home with her mother and four other family members and adults.  Mother helps grandmother financially with living expenses associated with the home with income she earns from a regular babysitting job.  She also receives government assistance in the form of food stamps.  C.R. shares a bedroom but has his own bed in the home.  Stacy R. testified that she does not believe that mother has the financial means to take care of C.R. or to provide a stable home, but she provided no evidence to contradict mother or grandmother's testimony concerning mother's living arrangements or her steady employment as a babysitter.

{¶9}    Mother testified that she has been to C.R.'s school for his parent teacher conference and a classroom party and that she attends his ballgames.  Mother also testified that Stacy R. has helped her raise C.R. and watched him while mother attended high school and worked at McDonald's.  Stacy R. testified that she took C.R. to doctor appointments when he was an infant and that he has been fairly healthy since.  However, Stacy R. conceded that mother was also present at those doctor appointments and attended a more recent dentist appointment in 2013 or 2014.  Stacy R. provided a great deal of inconsistent and conflicting testimony concerning the amount of time mother spent living with her and caring for C.R. while they both lived together. During cross-examination Stacy R. asserted her Fifth Amendment right against self-incrimination due to possible perjury in earlier deposition and hearing testimony on this issue.

{¶10}  Mother testified that she had a criminal record that consisted of a drug paraphernalia charge for having a syringe and a spoon in her possession and a traffic violation consisting of an OVI charge that was reduced to reckless operation, driving

under suspension, and a defective exhaust. She testified that she had agreed to give C.R.'s father custody of C.R. in June 2014 because she needed to change her life to "do a lot better" because she "had made a lot of mistakes." Mother testified that she entered a drug treatment program and completed it and continues to voluntarily attend group counseling sessions. She testified that she has passed every drug test since October 2014.

{¶11} Paternal aunt testified that her concern with mother's suitability involved her past drug issues. While the aunt believed mother was "staying clean," she would like to see more time without a relapse to satisfy her concerns. Other than her concern about a relapse, aunt had no other concerns about mother's suitability as a parent. She testified that she has seen C.R. and mother interact and that C.R. was excited to see his mother, hugged her, and talked with her.

{¶12} Stacy R. testified that she does not believe that mother is suitable because she believes mother is still doing drugs, though she did not introduce failed drug tests or other evidence to support her belief. Stacy R. also testified that she does not believe that mother is suitable to parent C.R. because "she's never been a parent to him." Stacy R. testified that she provided care for C.R. during the time that he resided with her, taking care of him while mother attended high school and getting up during the night with him when he was an infant.

{¶13} Stacy R. argues that, "given [mother's] record of indifference toward [C.R.] throughout the first seven years of his life, her criminal record, her living arrangements and her lack of financial or personal stability," it is clear that the juvenile court abused its discretion in granting custody to mother. Stacy R. points to the fact that there is no

evidence of any drug tests in the record and no testimony from anyone at the drug counseling center to bolster mother's own testimony. However, Stacy R. is the party who carries the burden of proof and must present evidence of unsuitability.  To support her argument that the juvenile court abused its discretion, she cites to nothing in the record other than mother's testimony that she lives with the maternal grandmother and that mother's brother is a recovering addict.

{¶14}  To overturn the juvenile court's decision to award custody to mother, Stacy R. must show that the court abused its discretion – that no conscientious judge could honestly have awarded mother custody. Here, Stacy R. argues that mother "had a record of indifference," which was shown by the fact that Stacy R. provided care for C.R. while C.R. and mother lived with her.  However, to prove unsuitability, Stacy R. must present evidence that mother abandoned the child, contractually relinquished custody, or is totally incapable of supporting or caring for the child.  The record shows that both mother and Stacy R. provided care for C.R. during the time mother and C.R. resided with Stacy R.. And the record shows that Stacy R. provided inconsistent, if not perjurious testimony about mother's whereabouts during the time Stacy R. claims C.R. resided alone with her.

{¶15}  Stacy R. also argues that mother's "criminal record, her living arrangements and her lack of financial or personal stability" proves she is unsuitable. Yet the record shows that mother's criminal record consists of one drug paraphernalia charge and a traffic-related conviction and that she lives with maternal grandmother in a four-bedroom home, works regularly as a babysitter, and contributes to household expenses with her babysitting income. Mother has completed a drug treatment program,

tested negative on drug tests, and voluntarily continues with group counseling. Based upon the evidence set forth in the record, the juvenile court did not abuse its discretion in finding that Stacy R. failed to show by the preponderance of the evidence that mother is an unsuitable parent.

## IV. CONCLUSION

{¶16}  The evidence in the record shows that mother has a caring and positive relationship with C.R., resides with C.R.'s maternal grandmother in a home, maintains employment as a babysitter, contributes to household expenses, completed a drug treatment program, has passed drug tests, and voluntarily continues with group counseling.  There is nothing arbitrary, capricious, or unreasonable about the trial courts finding that Stacy R. failed to carry her burden of proof. Accordingly, we overrule Stacy R.'s assignment of error and affirm the juvenile court's judgment.

JUDGMENT AFFIRMED.

## **<u>JUDGMENT ENTRY</u>**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Abele, J.:  Concur in Judgment and Opinion.


For the Court



BY:  _____
       William H. Harsha, Judge



## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**