[Cite as *In re B.M.*, 2017-Ohio-7878.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | Case No. 16CA12 |
| | : | |
| B.M. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| | : | |
| | : | **Released: 09/21/17** |

_____

APPEARANCES:[1]

L. Jackson Henniger, Logan, Ohio, for Appellants.

William W. Henderson, Logan, Ohio, for Appellee.

Charles A. Gerken, Logan, Ohio, Guardian Ad Litem.

Melissa Meuller Rose, Middletown, Ohio, Pro Se Appellee.

_____

McFarland, J.

{¶1} Mark L. Meuller and Melody L. Meuller, (hereinafter "Appellants") are the maternal grandfather and step-grandmother of B.M. Appellants are now appealing the entries of the Hocking County Court of Common Pleas, Juvenile Division, filed July 9, 2014 and May 3, 2016. Upon review of the record, we find the trial court did not abuse its discretion in dismissing Appellants' complaint/motion for custody of B.M. Because

---

[1] Neither Attorney Henderson, on behalf of Appellee Nickolas Mabry, nor Appellee Melissa Meuller Rose, pro se, elected to file a brief on appeal.

we find no error, we affirm the judgment of the trial court. Appellants'

assignments of error are overruled.

## FACTS

{¶2} This matter concerns "B.M.," who was born in 2002.[2] B.M.'s

parents are Melissa Meuller-Rose (hereinafter "Mother") and Nickolas R.

Mabry, (hereinafter "Father"). B.M.'s parents did not marry and lived

together intermittently during the first 3-4 years of B.M.'s life. A detailed

chronology of the procedural history of the case will be set forth below in

our discussion of the first assignment of error.

{¶3} In 2005, the Hocking County Juvenile Court designated Mother

as the residential parent and established a child support order. At that time,

the court noted B.M. and her mother resided in Laurelville, Ohio, in

Hocking County. Father was properly served notice of the proceeding but

did not make an appearance.

{¶4} In November, 2013, Appellants filed a complaint for

grandparent custody in Shelby County, Ohio.[3] In December 2013, the

Father filed a complaint for custody in Shelby County as well. Then in early

2014, Appellants and B.M.'s Father also filed complaints for custody in

---

[2] These facts are similarly set forth in our prior decision in *In re B.M.*, 4th Dist. Hocking No. 14CA12, 2015-Ohio-1504, *supra*, at ¶¶ 2-7.
[3] The complaint alleged that both B.M.'s parents were unsuitable and incapable of being her legal custodians. The complaint also alleged B.M. had been abused and neglected by the Mother's husband, Jeremy Rose. By this time, Mother was living in Middletown, Ohio.

Hocking County Juvenile Court. On January 28, 2014, the Hocking County Juvenile Court found that Hocking County had first acquired jurisdiction in 2005. All proceedings were cancelled in Shelby County.

{¶5} The Hocking County Juvenile Court held a final hearing on the motion for change of custody and the grandparents' complaint on June 27, 2014. By the court's entry dated July 9, 2014, the court found that both parents were suitable and denied the Appellants' complaint for custody. The court further found a substantial change in circumstances since the time custody was granted to the Mother. The trial court found it in the best interests of B.M. to grant the Father's motion for custody and also granted the Mother standard visitation rights pursuant to local rule. The trial court continued Appellants' motion for visitation pending further order of the court.

{¶6} Appellants commenced a timely appeal. On April 15, 2015, this court dismissed the grandparents' appeal for lack of a final appealable order due to the Appellants' unresolved claim for visitation with B.M. On May 3, 2016, the visitation request came on for hearing. By agreement of parties, the trial court granted Appellants visitation one weekend per month. On June 1, 2016, Appellants instituted the current appeal, challenging the trial

court's judgments dated July 9, 2014 and May 3, 2016.  Where relevant,

additional facts will be set forth below.

ASSIGNMENTS OF ERROR ONE AND TWO

"I. THE HOCKING COUNTY JUVENILE COURT DID NOT
HAVE SUBJECT MATTER JURISDICTION OF THIS CASE,
UNDER R.C. SECTION 2151.23(A)(2) AND R.C. SECTION
2151.06 IN THAT NO PARTY WAS A RESIDENT OF THE
COUNTY AND THE CHILD SUPPORT CASE FILED &
DETERMINED IN THE COURT IN 2005 DID NOT
CONFER SUBJECT MATTER JURISDICTION ON THE
COURT, AND THE PARTIES COULD NOT SO CONFER."

A. Standard of Review

{¶7}  The existence of a trial court's subject-matter jurisdiction is a

question of law that we review de novo. *Tewksbury v. Tewksbury,* 4th Dist.

Pike No. 07CA771, 2008-Ohio-4600, ¶ 15, citing *State ex rel. ACCSEA v.*

*Balch,* 4th Dist. Athens No. 06CA26, 2007-Ohio-7168, ¶ 22; *Yazdani-*

*Isfehani v. Yazdani-Isfehani,* 4th Dist. Athens No. 06CA6, 2006-Ohio-7105,

¶ 20, citing *State v. Moore*, 4th Dist. Highland No. 03CA18, 2004-Ohio-

3977, ¶ 8, and *Burns v. Daily,* 114 Ohio App.3d 693, 701, 683 N.E.2d 1164

(11th Dist.1996).  Therefore, we do not grant any deference to the trial

court's conclusion. *Tewksbury, supra*, citing *Balch*, at ¶ 22.

B. Legal Analysis

{¶8}  Subject-matter jurisdiction is defined as a court's power to hear

and decide particular classes of cases. *Gonzales v. Perez,* 7th Dist. Carroll

No. 13CA893, 2015-Ohio-1282, ¶ 11, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004–Ohio–1980, 806 N.E.2d 992, ¶ 11.  It may not be conferred by agreement of the parties or waived, and is the basis for mandatory, sua sponte dismissal either at the trial court or on appeal. *Keeley v. Stoops,* 7th Dist. Belmont No. 13 BE 23, 2014–Ohio–4161, ¶ 10.  Personal jurisdiction describes a court's authority over particular litigants in a specific case, and "may be acquired either by service of process upon the defendant or the voluntary appearance and submission of the defendant to the jurisdiction of the court." *Snyder Computer Sys., Inc. v. Stives,* 175 Ohio App.3d 653, 2008–Ohio–1192, 888 N.E.2d 1117, ¶ 14 (7th Dist.), citing *Maryhew v. Yova,* 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984).  Unlike subject-matter jurisdiction, personal jurisdiction and venue can be waived. *Keeley* at ¶ 11.  Moreover, jurisdiction and venue are distinct legal concepts. *In re Z.R.,* 144 Ohio St. 3d 380, 2015-Ohio-3306, 44 N.E.3d 249, ¶ 16; *In re A.G.,* 139 Ohio St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, ¶ 53, citing *Morrison v. Steiner,* 32 Ohio St.2d 86, 290 N.E.2d 841 (1972), paragraph one of the syllabus.  Venue is a "procedural matter," and it refers not to the power to hear a case but to the geographic location where a given case should be heard. *Morrison* at 87–88, 290 N.E.2d 841.

{¶9} In this case, custody of B.M. has been the subject of actions filed in Shelby County Probate Court, Shelby County Juvenile Court, and Hocking County Juvenile Court. On appeal, Appellants argue the Hocking County Juvenile Court does not possess subject-matter jurisdiction pursuant to R.C. 2151.23(A)(2) or R.C. 2151.06, read together. Appellants point out the Hocking County Juvenile Court acquired jurisdiction in 2005 only by virtue of the child support case filed by the Hocking County Child Support Enforcement Agency. However, when the Father filed his ex parte motion for temporary custody on January 14, 2014, none of the parties resided in Hocking County. Appellants contend the Hocking County Juvenile Court has no jurisdiction in these proceedings due to the fact of the Father's residence in Franklin County, and also due to the fact B.M.'s mother is no longer a resident of Hocking County.

{¶10} "The juvenile court possesses only the jurisdiction that the General Assembly has expressly conferred upon it." *In re T.J.B.*, 1st Dist. Hamilton No. C-130725, 2014-Ohio-2028, at ¶ 8. *See In re Gibson,* 61 Ohio St.3d 168, 172–173, 573 N.E.2d 1074 (1991), citing Ohio Constitution, Article IV, Section 4(B). The subject-matter jurisdiction of the juvenile court is created and defined in R.C. 2151.23. *See Id.*; *see also Rowell v. Smith*, 133 Ohio St.3d 288, 2012–Ohio–4313, 978 N.E.2d 146, ¶ 13. The

pertinent portion of R.C. 2151.23 states: "(A) The juvenile court has exclusive original jurisdiction under the Revised Code as follows: (2) * * * to determine the custody of any child not a ward of another court of this state." Therefore, the unambiguous statutory language demonstrates that a juvenile court has subject-matter jurisdiction over the parties' competing motions for custody of B.M.

{¶11} Under sections 2151.04 to 2151.54, inclusive, of the Revised Code, a child has the same residence or legal settlement as his parents, legal guardian of his person, or his custodian who stands in the relation of loco parentis. Appellants contend at the time they filed their complaint for custody, they stood "in loco parentis" of B.M. The Ohio Supreme Court explained the term "in loco parentis" as meaning "charged, factitiously, with a parent's rights, duties, and responsibilities." *In re T.H.*, 5th Dist. Muskingum No. CT2016-0008, 2016-Ohio-7310, ¶ 30, quoting *State v. Noggle,* 67 Ohio St.3d 31, 33, 1993–Ohio–189, 615 N.E.2d 1040 (superseded by statute as stated in *State v. Mole,* 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, citing Black's Law Dictionary (6th Ed.1990)

787.  A person in loco parentis has assumed the same duties as a guardian or custodian, only not through a legal proceeding. *Id.*[4]

{¶12}  Our review of the law indicates that, faced with conflicts between a probate court and a domestic or juvenile court's exercise of jurisdiction, Ohio courts have held that the first court to properly exercise jurisdiction over the custody of a minor retains exclusive jurisdiction. *In re N.P.*, 6th Dist. Fulton No. F-10-030, 2011-Ohio-3846, at ¶ 13. *See, e.g., Addams v. State,* 104 Ohio St. 475, 135 N.E. 667 (1992); *In re Pushcar,* 110 Ohio St.3d 332, 853 N.E.2d 647, 2006–Ohio–4572, citing *In re Asente,* 90 Ohio St.3d 91, 734 N.E.2d 1224 (2000); *In the Matter of the Guardianship of Pierce,* 4th Dist. Ross No. 03CA2712, 2003–Ohio–3997.  Here, the record reflects the following chronology of filings in the Shelby County Juvenile and Probate Courts and Hocking County Juvenile courts:

| | |
|---|---|
| Hocking JC, Aug. 8, 2005– | Hocking CSEA filed motion for support and medical insurance. |
| Hocking JC, Oct. 13, 2005– | Hocking JC designated Mother as residential parent and established child support order. |
| Shelby PC, Oct. 28, 2013– | Grandparents granted guardianship. |
| Shelby JC, Nov. 4, 2013– | Grandparents filed for Ex Parte custody and full legal custody as B.M. |

---

[4]  B.M. went to stay with Appellants after she made allegations of physical abuse by Mother's husband, Jeremy Rose, and sexual abuse by another male occurring during the time she was in the care of her Mother.

|  |  |
|---|---|
|  | had been with them since June 2013. Both parents alleged to be unsuitable. Grandparents were current legal guardians. |
| Shelby PC, Nov. 15, 2013– | Court sua sponte dismissed guardianship as grandparents had filed for custody and juvenile court had jurisdiction. |
| Shelby JC, Nov. 14, 2013– | Grandparents granted Ex Parte temporary custody of B.M. |
| Shelby JC, Dec. 12, 2013– | Father filed complaint for temporary and permanent custody. Father also filed motion to dismiss Grandparents' complaint. |
| Hocking JC, Jan. 14, 2014– | Father filed Ex Parte complaint for emergency custody. B.M. was staying with Grandparents and not being cared for by Mother. |
| Shelby JC, Jan. 15, 2014– | Father filed motion to dismiss the Grandparents' complaint in Shelby JC for lack of jurisdiction. Alleged Grandparents were forum shopping and jurisdiction was previously acquired in Hocking County in 2005. |
| Hocking JC, Jan. 21, 2014– | Court granted Ex Parte custody to Father. |
| Shelby JC, Jan 24, 2014– | Grandparents filed motion in response to Father's motion to dimiss. They stood in loco parentis to B.M. and jurisdiction was appropriate in county where B.M. resided. In the alternative, Grandparents requested transfer of venue to Hocking County. |

| | |
|---|---|
| Shelby JC, Jan. 27, 2014– | Shelby JC transferred matter to Hocking JC. |
| Hocking JC, Jan. 28, 2014– | Court accepted transfer of case. |
| Hocking JC, Feb. 27, 2014– | Grandparents filed motion for visitation. |

{¶13} For the reasons which follow, we agree with the trial court's determination that it properly retained subject-matter jurisdiction in this case. The facts in the record clearly demonstrate that the Hocking County Juvenile Court acquired jurisdiction in 2005. R.C. 2151.23(B) also provides: "* * * [T]he juvenile court has original jurisdiction under the Revised Code: (4) To hear and determine an application for an order for the support of any child, if the child is not a ward of another court of this state." The record demonstrates at the time of the 2005 child support proceeding in which the Mother was designated the residential parent, B.M. and her Mother resided in Hocking County. B.M. was not a ward of the Shelby County Probate Court or any other court of the state at the time Hocking County established jurisdiction. The simple passage of time between the 2005 child support order and the 2013 custody filings did not somehow function to deprive Hocking County of its original jurisdiction.

{¶14} In their brief, Appellants argue:

"At the time and that father filed his *ex parte* motion for temporary custody of the child, the county that had jurisdiction

was Shelby County * * *. The county having jurisdiction did not change by virtue of the agreement of the courts or any of the parties. Only the statute can confer jurisdiction, and the county is not Hocking County." (sic.)

{¶15} We disagree with Appellants' construal of the clear record and construal of the facts regarding the transfer of the Shelby County proceedings to Hocking County. It does not appear that the judges simply "agreed" to confer jurisdiction on Hocking County without a consideration of the facts. When Appellants filed their complaint for custody in Shelby County, either by inadvertence, misrepresentation, or simple lack of knowledge, they failed to report on the attached parenting proceeding affidavit that proceedings involving B.M. had previously taken place in Hocking County.[5] When the Shelby County Juvenile Court became aware of Hocking County's prior jurisdiction in the matter, it was then discussed between the judges and agreed that the case be transferred back to Hocking County where proceedings involving B.M. originated in 2005. The Hocking County Juvenile Court's entry filed January 28, 2014 reflects that when Judge Zimmerman in Shelby County and Judge Wallar in Hocking County realized there were conflicting ex parte custody orders issued from their courts, and conflicting court dates, and they engaged in discussion to resolve the matter of "competing" jurisdictions of the two juvenile courts. Given the

---

[5] Appellants have argued Father mislead the court in this same regard.

clear record of the proceedings, these circumstances certainly do not characterize any improper "conferral" or agreement regarding transfer of jurisdiction.

{¶16} Jurisdiction is a legal question which may be raised at any time. *Parker v. Jones,* 4th Dist. Ross No. 14CA3421, 2014-Ohio- 3862, ¶ 7. However, we also observe that while B.M. was residing with Appellants in Shelby County in 2013 when they filed the grandparents' complaint for custody, Appellants did not protest the Hocking County Juvenile Court's jurisdiction until they received an unfavorable decision. Appellants filed a motion to transfer the matter to Hocking County Juvenile Court as an alternative, in response to the Father's motion to dismiss their complaint for custody in Shelby County. After Appellants filed for custody in February 2014, they followed up with multiple appearances and filings, voluntarily appearing and submitting themselves to the authority of the Hocking County Juvenile Court.

{¶17} For the foregoing reasons, we find no improper subterfuge between the trial courts regarding jurisdiction. We find subject-matter jurisdiction of these proceedings involving B.M. was properly retained in Hocking County Juvenile Court. As such, Appellants' first assignment of error has no merit and is hereby overruled.

II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AWARDING CUSTODY TO APPELLEE-DEFENDANT FATHER, IN THAT:

A. FAILING TO FIND HIM UNSUITABLE, WHEN CLEARLY HE HAD ABANDONED THE CHILD BY FAILING TO OBTAIN VISITATION ORDERS, FAILING TO EXERCISE VISITATION, AND FAILING TO PAY CHILD SUPPORT WHICH CONSTITUTES AN ABANDONMENT OF THE CHILD.

B. FAILNG TO CONSIDER THE FOURTH CRITERIA OF PERALES, THAT AN AWARD OF CUSTODY TO A GIVEN PARENT, TO WIT, FATHER, WOULD BE DETERIMENTAL TO THE CHILD.

C. FAILING TO FIND THAT AN AWARD OF CUSTODY TO FATHER WOULD BE DETERMENTAL TO THE CHILD WHEN OBVIOUSLY IT WAS, UNDER THE CIRCUMSTANCES ADDITIONALLY THAT THE COURT HAD IMPROPERLY INFLUENCED THE EVIDENCE AVAILABLE TO IT BY ITS COERCIVE, WRONG, AND INCORRECT COMMENTS, PRONOUNCEMENTS, STATEMENTS OF THE LAW, EXPRESSIONS OF PREJUDICE, AND NEGATIVE DEMEANOR TOWARD APPELLANTS AND THE CHILD.

D. FAILING TO FIND MOTHER SUITABLE OR UNSUITABLE.

E. FAILING TO PROPERLY INQUIRE INTO THE TRUTH AND CIRCUMSTANCES OF THE ALLEGATIONS OF CHILD ABUSE OF THE CHID IN THE HANDS OF HER MOTHER, BY HER HUSBAND, PARAMOUR, OR THEIR RELATIVES, IN THE EXERCISE OF ITS DUTY TO DETERMINE SUITABILITY OF MOTHER.

A. Standard of Review

1. Custody Disputes

{¶18} A trial court has broad discretion in determining custody

matters. *S.R. v. T.A. (R.),* 4th Dist. Highland No. 15CA9, 2015-Ohio-5322,

¶ 6; *Reynolds v. Goll,* 75 Ohio St.3d 121, 124, 661 N.E.2d 1008 (1996).

Consequently, we can sustain a challenge to a trial court's custody decision

only upon a finding that the trial court abused its discretion. *Davis v.*

*Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).  An abuse of

discretion is an unreasonable, arbitrary, or unconscionable use of discretion,

i.e., a view or action that no conscientious judge could honestly have taken.

*State v. Kirkland,* 140 Ohio St.3d 73, 2014–Ohio–1966, 15 N.E.3d 818,

¶ 67; *State v. Gavin,* 4th Dist. Scioto No. 13CA3592, 2015–Ohio–2996,

¶ 20.  When applying an abuse-of-discretion standard, we are not free to

merely substitute our judgment for that of the trial court. *In re Jane Doe 1*,

57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181 (1991).  A deferential review

in a child-custody case is appropriate because much may be evident in the

parties' demeanor and attitude that does not translate to the record well.

*Davis, n.k.a. Baker v. Flickinger,* 77 Ohio St.3d at 419, 674 N.E.2d 1159.

2. Custody Disputes Involving Nonparent

{**¶19**}  It is undisputed that the right of a parent to raise her own child

is an essential and basic civil right. *S.R., supra,* ¶ 7; *In re Murray*, 52 Ohio

St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois,* 405 U.S.

645, 651, 92 S.Ct. 1208 (1972).  Thus, natural parents have a paramount

right, as against third parties, to custody of their children. *Murray, supra;*

*Clark v. Bayer*, 32 Ohio St. 299, 310 (1877). This right, however, is not absolute. *See In re Kovaleski,* 4th Dist. Washington No. 05CA12, 2006–Ohio–317, at ¶ 14, citing *In re Johnson,* 4th Dist. Ross No. 94CA2003, 1995 WL 146064 (Mar. 29, 1995). In a custody proceeding under R.C. 2151.23(A)(2) between a parent and a nonparent, the court may not award custody to the nonparent without first determining that the parent is unsuitable to raise the child, i.e., without determining by a preponderance of the evidence that the parent abandoned the child or contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child. *In re Perales,* 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047 (1977), at syllabus. If a trial court's "unsuitability" finding is based on detriment to the child, the court must measure suitability in terms of the harmful effect on the child, not in terms of society's judgment of the parent. *In re Dunn,* 79 Ohio App.3d 268, 271, 607 N.E.2d 81, (3rd Dist.1992), citing *Perales* at ¶ 98.

## B. Legal Analysis

### 1. Application of the Law

**{¶20}** As an initial consideration, Appellants contend the trial court had a "mistaken view" of the law. Appellants point to several portions of

the transcript to support this argument.[6]  However, we do not find the trial

court applied incorrect standards regarding custody proceedings involving

nonparents.  In the trial court's July 9, 2014 entry, the language used

references the Perales standard for determination of custody proceedings

involving nonparents seeking custody.

{¶21}  We also observe that the trial court did set forth findings of fact

in its July 9, 2014 decision, though not captioned as such.  However, the

record does not reflect Appellants made any written request, pursuant to

Civil Rule 52, for findings of fact and conclusions of law.  In the absence of

findings of fact and conclusions of law, we generally must presume that the

trial court applied the law correctly and must affirm if some evidence in the

record supports its judgment. *In re S.S.*, 4th Dist. Jackson Nos. 16CA7,

16CA8, 2017-Ohio-2938, at ¶ 131, citing *Bugg v. Fancher,* 4th Dist.

Highland No. 06CA12, 2007–Ohio–2019, ¶ 10, citing *Allstate Fin. Corp. v.

Westfield Serv. Mgt. Co.,* 62 Ohio App.3d 657, 577 N.E.2d 383 (12th

Dist.1989); *accord Yocum v. Means*, 2nd Dist. Darke No. 1576, 2002–Ohio–

3803, ¶ 7 ("The lack of findings obviously circumscribes our review

---

[6] Upon our review of all the transcripts in this matter, it appears the trial court was either: (1) paraphrasing for the benefit of the parties, the Mother in particular who was representing herself pro se; (2) discussing the potentially applicable standards with counsel in conjunction with a discussion of the timeframe needed to hear the case; or (3) cautioning the parties about "mudslinging" and the questions to be submitted for use during the in camera interviews.

* * *.").  As the court explained in *Pettet v. Pettet,* 55 Ohio App.3d 128,

130, 562 N.E.2d 929 (5th Dist.1988).

    2.  <u>Unsuitability of the Father.</u>

**{¶22}**  Under the second assignment of error, Appellants argue the

trial court erred and abused its discretion in awarding custody to the Father

because Appellants presented evidence that the Father abandoned the child.

Then, Appellants join many of the remaining assignments of error under this

assignment of error and further argue that they did not receive a fair trial

from a fair and impartial judge.  "[F]ailure to comply with the rules

governing practice in the appellate courts is a tactic which is ordinarily

fatal." *Cantanzarite v. Boswell,* 9th Dist. Summit No. 24184, 2009-Ohio-

1211, at ¶16, quoting *Kremer v. Cox,* 114 Ohio App.3d 41, 60, 682 N.E.2d

1006 (9th Dist.1996).  Further, "t]hough appellate courts have the option to

address two or more assignments of error at once, the parties do not."

*Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 3009-Ohio-3126,

¶ 15. *Powell v. Vanlandingham,* 4th Dist. Washington No. 10CA24, 2011-

Ohio-3208, ¶ 24; *Keffer v. Cent. Mut. Ins. Co.,* 4th Dist. Vinton No.

06CA652, 2007-Ohio-3984, ¶ 8, fn.2.  Parties must comply with the Ohio

Rules of Appellate Procedure. *Grimes,* at ¶ 15, fn.4.  If not, App.R. 12(A)(2)

permits us to disregard those assignments of error that are not separately

argued. *Id. Prokos v. Hines,* 4th Dist. Athens Nos. 10CA51, 10CA57, 2014-Ohio-1415, ¶63.  However, in the interest of justice, we address the second assignment of error solely with regard to Appellants' argument, which we interpret as the trial court's alleged abuse of discretion in denying Appellants' complaint for custody.

{¶23}  We begin by recognizing that Appellants have the burden to establish by a preponderance of the evidence that the Father is an unsuitable parent. *See S.R., supra,* citing *In re Z.A. P.,* 2008-Ohio-3701, 894 N.E.2d 342 (4th Dist.).  Appellants argue the trial court erred in failing to find the Father's errors or omissions constituted abandonment of B.M.  Appellants point out (1) Father had failed to obtain a visitation order or exercise visitation rights; (2) Father had failed to pay child support from 2005 to the present; and (3) B.M. testified that she had little contact with her father and he allowed smoking in his household.  Here, the trial court heard testimony from the Father and other witnesses.  The trial court also conducted two in camera interviews of B.M.

{¶24}  The Father testified he is married to Melinda Mabry, they have one child together, and her two other children live with them.  The Father is employed by a computer company.  He drives a truck through the State of Ohio and delivers computer items.

{¶25} Father testified he has had a relationship with B.M. her entire life. After B.M. was born, Father and Mother lived together for the first 3-4 years of her life. However, when Mother married Jeremy Rose, she moved to Middletown, Ohio, and "fell off the globe." Father did not have a contact number for Mother and he lost contact with B.M. for approximately 9 months. Eventually, through a mutual friend, he sent a message for Mother to contact him and although he did not have court-ordered visitation, he again began to see B.M. on weekends. Mother or another family member met him to exchange B.M. for visitation. Mother and Father remained civil to each other. According to Father, he saw B.M. every weekend or every other weekend, if his work schedule interfered.

{¶26} In June 2013, B.M. had been in Father's care for 10-11 days. He had dropped her off to stay with Jennifer Meuller, B.M.'s maternal aunt, for a couple of days. On June 15th, Ms. Meuller called Father and advised him of B.M.'s allegations of abuse against Jeremy Rose. On June 15th, Father met Ms. Meuller in Pickaway County. The sheriff and a social worker were also there to question B.M. about the abuse. Then, Father took B.M. back to Columbus. The next day he took her to Franklin County Children's Services. However, because Father was not the legal guardian, B.M. was not questioned. Early the next morning, Appellants arrived and

took B.M. with them.  Father testified B.M. was kicking and screaming when she left and did not want to go with Appellants.

{¶27}  Father testified he and B.M. had a good relationship until June 15, 2013 when Appellants took her to stay with them.  Since the ongoing custody dispute, he feels B.M. has distanced herself from him.  However, once she is at his home, she's fine.  Father admitted the Appellants had facilitated weekend visitations.

{¶28}  Regarding child support, Father testified he was behind in payments 2-3 years when he first moved to Columbus.  However, Mother had indicated she did not want child support and that Father "was doing his part."  He did not know he was ordered to pay child support until he received a letter from the BMV indicating his license was suspended.  Currently, child support is taken out of his paycheck and he has been current the last couple of years.

{¶29}  Father testified he wants custody of B.M. and thinks she will adjust. Father always had a good relationship with the Mother until she became involved with Jeremy Rose.  If granted custody, Father was willing that Mother have visitation because B.M. needs Mother in her life.  Father testified he doesn't think visitation with Appellants would be a good idea.

In his opinion, their continued involvement would interrupt his rekindling of his relationship with her.

{¶30}  When B.M. went to stay with the Appellants on June 15th, he did not see her for 9 months.  Appellants told him B.M. could not come to his house because Mother would take her away.  Appellants indicated B.M. was supposed to stay with them until the children's services investigation was over.  Father explained he did not know where to file for custody because of Mother's transient lifestyle, but when he hired an attorney, he was advised to file in Shelby County when he should have filed in Hocking County.

{¶31}  Father testified B.M. loves her father's family and looked forward to seeing them.  He testified B.M. had never rebelled against coming to see him or talking on the phone.  He has an album full of pictures with B.M. in most of them.  To him, B.M. appears happy.

{¶32}  On cross-examination, Father denied complaining about driving some distance when visitation was set up in the case.  He denied complaining about attending B.M.'s basketball games in Shelby County.  He testified that he could not take off time from work if he was to support his family.  He further testified he was advised to stay out of Shelby County by

the police chief. Father denied ignoring the guardianship order Appellants were granted in Shelby County.[7]

{¶33} On cross-examination, Father admitted he has not paid off his arrears, but he is set up on a monthly payment and his taxes have been intercepted once. Father admitted there was friction between him and B.M. and, to an extent, he took some responsibility. Father testified in his opinion, Appellants have controlled how B.M. acts at his home by making promises to her. He cited B.M.'s lack of respect for him, Mother, and the rest of the family.

{¶34} Father testified Mother advised him B.M. was doing well in school. He admitted has never seen her report card. He admitted not knowing if B.M.'s immunizations were current.

{¶35} Father's observation is that Appellants have "bought" B.M.'s happiness. Although he admitted she was physically healthy, he opined Appellants had not taken good care of her "psychologically or mentally." Father testified as follows:

> "Mr. Mueller did say one time and standing in McDonald's
> parking lot that I was taking [B.M.'s] golden ticket and [B.M.]
> is looking at me like I'm a monster because he can provide so

---

[7] On this point, Father testified that when the parties appeared in Shelby County Probate Court and Appellants were granted a limited guardianship, the Judge "looked at all three parties in that courtroom that day and told us that this was probate court and it didn't mean nothing, all we had to do was go to where our Court order was for her- - um- - for her custody, get a juvenile paper, come up the next day and we could take our daughter any time of the week and that Judge said in that courtroom that all parties understood that and we all agreed that we did."

much for her up her in Botkins and he - - if my daughter comes and lives with me down in Columbus, she's going to become a little whore at thirteen years old, knocked up and pregnant."
* * * "Nick, you got three or four kids up there, you know, I've got nothing but time to kill up here and you can ask my wife the very same question."

{¶36} On cross-examination by the guardian ad litem, Father stated he would honor the Court's orders because he didn't want to be in contempt. He stated he was trying to do things the "right way." B.M. needed everybody involved in her life. Father expressed doubt that Jeremy Rose was completely "out of the picture." Father would take legal steps if necessary to protect B.M. from further abuse.

{¶37} Melinda Mabry, Father's spouse; Appellants; Jennifer Meuller, B.M.'s maternal aunt; and the court-appointed guardian ad litem also testified.[8] We reiterate that we have thoroughly reviewed the record and the transcripts of all the witnesses' testimony. The trial court's entry of July 9, 2014 states:

> "This court finds that [B.M.] has a strong bond with her mother, father Nickolas, stepmother Melinda Mabry, grandparents Mark and Melody Meuller and maternal aunt Jennifer Meuller and her children. There appears to be an unhealthy relationship between B.M. and her stepfather Jeremy Rose. It appears that [B.M.] has regularly moved from home to home and to different cities while in the custody of her mother; and has recently benefitted and experienced stability and good academic

---

[8] Mother, appearing pro se, had a passive role in the proceedings. She stated that she sought to retain custody of B.M. but she had not filed a motion in writing. She did not formally testify.

improvement during the time she has temporarily lived with her maternal grandparents, Mark and Melody Meuller. * * * However, the Court finds that the maternal grandparents have not encouraged [B.M.] to love and respect her mother and father. The Guardian Ad Litem Charles Gerken performed a thorough investigation, and consistent with the leading case of In re Perales (1977) 52 OS 2d 89, recommends that absent a finding of parental unfitness that the Court must grant custody to one of the parents. The Court agrees and finds that both parents are suitable parents and that grandparents' complaint/motion for custody must be denied."

**{¶38}** Having reviewed the record, we are mindful of the trial court's great deference in assessing witnesses' demeanor, attitude, and credibility. We defer to the trial court's determinations regarding all the witnesses who testified herein. In *Riley, supra,* at ¶ 19, we reiterated the law as set forth in *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80-81, 461 N.E.2d 1273, 1276-1277 (1984);

> "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing court * * *. This is even more crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Id.* at 418-419.

**{¶39}** As noted above, Appellants argue that Father abandoned B.M.

by failing to establish a visitation schedule years prior to the current proceedings and failing to maintain his child support obligations until recent years. The trial court heard conflicting evidence on these issues. In *In re J.R.*, 2nd Dist. Montgomery No.26894, 2016-Ohio-5054, Appellant sought custody of his "godson." He contended the trial court should have found the child's mother unsuitable because ample evidence showed that she had "constructively abandoned" him and giving custody to the mother would be to the child's detriment. Emphasizing a trial court's discretion in custody matters, the appellate court, however, noted, the only question presented was "whether Mother is a suitable custodian, " 'not whether someone else is more suitable.' " (Emphasis sic.) *In re D.C.J.*, 2012–Ohio–4154, 976 N.E.2d 931, at ¶ 58, quoting *In re S.M.*, 160 Ohio App.3d 794, 2005–Ohio–2187, 828 N.E.2d 1044, ¶ 31 (8th Dist.) (McMonagle, J., concurring).

{¶40} Based on our review of the record and transcripts herein, and the pertinent case law, we are not persuaded to disturb the trial court's findings. The record supports the trial court's determination as to Father's suitability. Thus, the trial court did not abuse its discretion by denying Appellants legal custody of B.M.

{¶41} Appellants also assert the trial court erred in failing to consider the fourth factor of *Perales*, that an award of custody to the Father would be

detrimental to B.M.  Appellants contend the trial court's pronouncement that both parents are suitable does not equate to a specific finding as to the *Perales* factor.  "Detrimental" means some type of harm is or can be suffered by the child. *In re M.N.,* 6th Dist. Lucas No. L-15-1317, 2016-Ohio-7808, at ¶ 13; *See Choi v. Ohio Univ.,* Ct. of Cl. No. 2015–00256–AD, 2015–Ohio–4898, ¶ 10.  The court "is to consider the extent and magnitude of [harm] that is likely to be experienced by a child being placed with his or her natural parent." *See, e.g., Butts v. Hill,* 5th Dist. Licking No. 11–CA–46, 2011–Ohio–5512, ¶ 51 (affirming finding of parental unsuitability).  Along with Appellants' argument that Father abandoned B.M. by failing to seek visitation and maintain child support, Appellants point to evidence that Father and his wife allowed smoking in their home and photographs of an ashtray taken by B.M. and introduced into evidence at the final custody hearing.

{¶42}  Again, however, we observe Appellants' failed to make a written request for findings of fact and conclusions of law.  This failure results in a waiver of the right to challenge the trial court's lack of an explicit finding concerning an issue. *Riley v. Riley,* 4th Dist. Washington No.

07CA16, 2008-Ohio-859, ¶17.  (Internal citations omitted.)[9]  As such, we may presume the trial court correctly considered all relevant facts and factors.  Furthermore, again, the trial court heard evidence that Appellants' manipulated B.M. or "bought" her.  There was conflicting evidence on the smoking issue and we defer to the trial court's determination of credibility.

### 3. Unsuitability of the Mother

**{¶43}**  Appellants also argue the trial court erred by failing to find the Mother was unsuitable.  Appellants point to the testimony regarding Mother's transient lifestyle.  All witnesses testified to this fact.  Jennifer Mueller recognized her sister had not provided stability for B.M. by moving so frequently.  However, she also expressed no hesitation or concern about Mother's continuing as B.M.'s legal guardian in her own right.  Ms. Mueller's only concern had to do with Jeremy Rose's possible involvement in Mother's and B.M.'s lives.  None of the parties wished to exclude Mother from B.M.'s life.  Again, given the court's better position to weigh credibility of all witnesses, we find the trial court did not abuse its discretion when it also found Mother to be a suitable parent.

---

[9] "[W]hen a party does not request that the trial court make findings of fact and conclusions of law under Civ.R. 52, the reviewing court will presume that the trial court considered all the factors and all other relevant facts." *Id.,* quoting *Fallang v. Fallang,* 109 Ohio App.3d 543, 549, 672 N.E.2d 730 (12th Dist.1996); *see also In re Barnhart,* 4th Dist. Athens No. 02CA20, 2002-Ohio-6023, ¶ 23.

**{¶44}** Appellants' argument that the trial court did not properly inquire into the circumstances of the allegations of child abuse when B.M. resided with her mother is particularly without merit. We disagree. Upon review of the record, we observe the trial court showed great concern with regard to the abuse allegations. In the trial court's July 9, 2014 entry, the trial court explicitly stated:

> "The sworn testimony established that * * * did allege physical and sexual abuse by her stepfather, Jeremy Rose, while the child was living with her Mother and Jeremy Rose. She also alleged abuse by step-grandfather Mr. Passmore in Pickaway County Ohio. Although the father and grandparent petitioners reported the allegations to Butler County Children Services, Pickaway County Children Services and Franklin County Children Services, the allegations were either found unsubstantiated or not investigated at all, leaving all reporters feeling that the system had not adequately protected * * *. There appears to be an unhealthy relationship between * * * and her stepfather Jeremy Rose. It appears that * * * has regularly moved from home to home and to different cities while in the custody of her mother * * *."[10]

**{¶45}** For the foregoing reasons, we find no merit to Appellants' second assignment of error. As such, it is hereby overruled.

### THE REMAINING ASSIGNMENTS OF ERROR

---

[10] The trial court's record reflected those concerns repeatedly, and specifically, when the trial judge stated: "But, you know, something horrible has happened here and I don't know what it is. * * * If we were to believe children services, they are saying nothing happened, that the girl is a liar. That's a horrible outcome as far as I'm concerned because if she'd lie about that, what else would she lie about. So I tend to believe something did happen that has traumatized this young lady."

{¶46} App.R. 16(A)(17) requires an appellant's brief to contain an argument with citations to authorities. *McDonald v. McDonald,* 4th Dist. Highland No. 12CA1, 2013-Ohio-470, ¶ 20. Appellants' brief sets forth in the "Table of Contents" ten assignments of error. Appellants' first "Assignment of Error" regarding subject-matter jurisdiction, as discussed above, is set forth separately in the "Argument" section of the brief. "Assignment of Error Two," regarding the trial court's award of custody to the father, appears to argue jointly various other assignments of error. And, beginning with "Assignment of Error Three," the remaining assignments of error are not argued fully.

{¶47} An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "lack of briefing" on the assignment of error. *In the Matter of G.N.C.,* 5th Dist. Licking No. 13-CA-112, 2014-Ohio-3092, ¶ 17, citing *Hawley v. Ritley,* 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393 (1988); *Abon, Ltd. v. Transcontinental Ins. Co.,* 5th Dist. Richland No.2004-CA-0029, 2005 WL 1414486, ¶ 100; *State v. Miller,* 5th Dist. Ashland No. 04-COA-003, 2004-Ohio-4636, ¶ 41. The remaining assignments of error were set forth as follows:

> III. THE TRIAL COURT ERRED AND ABUSED ITS
> DISCRETION IN FAILING TO FIND THAT BOTH
> APPELLEE DEFENDANT FATHER AND APPELLEE
> DEFENDANT MOTHER WERE UNSUITABLE.

IV.  THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THAT THE TRIAL JUDGE RICHARD M. WALLAR FAILED TO ACT IN A FAIR AND IMPARTIAL MANNER, BY, *INTER ALIA*:

A.  IMPROPERLY, INAPPROPRIATELY, AND WITH PARTIALITY AND PREJUDICE ORDERING THAT HE DID NOT CARE TO ENTERTAIN NEGATIVE VIEWS OF THE PARENTS WHEN PROOF OF NEGATIVE MATTERS ABOUT THEM IS THE ESSENCE OF MEETING THE UNSUITABILITY STANDARD IN PROVING UNSUITABILITY, THEREBY IMPROPERLY PREDLUDING THE APPELLANTS FROM PROVING THEIR CASE.

B.  THROUGH OUT THE PROCEEDINGS, JUDGE WALLAR ACTED WITH PREJUDICE, AND THEREBY ABUSED HIS DISCRETION, TO INITMIDATE, COERCE AND COW THE APPELLANTS, THEIR WITNESSES, THEIR ATTORNEY, AND THE CHILD, THEREBY DEPRIVING THE APPELLANTS OF A FAIR TRIAL, AND IMPROPERLY AFFECTING WHAT EVIDENCE CAME BEFORE THE COURT, KEEPING EVIDENCE OUT OF COURT, AND NOT GIVING THE EVIDENCE BEFORE THE COURT ITS PROPER WEIGHT BY REASON OF THE JUDGE'S PREJUDICE TOWARD AND INAPPROPRIATE ATTITUDE TOWARD THE APPELLANT LITIGANTS AND THE CHILD.

V.  THE TRIAL COURT JUDGE WALLAR FAILED TO ACT IN A FAIR AND IMPARTIAL MANNER, AND THEREBY ABUSED HIS DISCRETION, BY, INTER ALIA, JARRINGLY AND INAPPROPRIATELY ANNOUNCING THAT HE WAS UPSET WITH APPELLANTS BECAUSE THEY HAD FILED PLEADINGS IN SHELBY COUNTY WHICH WAS THE IMPROPER COUNTY, WHICH IS A STATEMENT BASED ON AN INCORRECT LEGAL ASSESSMENT IN THE FIRST PLACE, AND BY IMPROPERLY TWISTING AND MISCHARACTERIZING THE STATEMENT OF COUNSEL RELATIVE TO THE ISSUE OF NOT BEING ABLE TO SCHEDULE A

COUNSELING SESSION FOR THE CHILD BY CRITICIZING AND BERATING COUNSEL, OR THE APPELLANTS AS IF THEY HAD BEEN RESPONSIBLE FOR BEING UNABLE TO SCHEDULE THE SESSIONS AND IN WRONGLY ACCUSING COUNSEL OF BLAMING THE FAILURE TO OBTAIN THE COUNSELING ON THE STAFF MEMBER THE COURT HAD ASSIGNED TO ASSIST, WHEN IN FACT THAT WAS NOT COUNSEL'S STATEMENT NOR HIS POSITION, AND WHEN IN FACT THAT FAILURE TO OBTAIN THE COUNSELING WAS NOT DUE TO ANYTHING COUNSEL OR HIS CLIENTS DID.

VI. THE TRIAL COURT JUDGE WALLAR ABUSED HIS DISCRETION IN THAT:

A.  HE CONDUCTED LEAST (SIC) ONE IN CAMERA INTERVIEW(S) OF THE CHILD THAT WERE CONDUCTED CONTRARY TO LAW, IN THAT CONTRARY TO R.C. SECTION 3109.04(B)(2), MADE APPLICABLE TO THE PROCEEDING BY R.C. SECTION 2151.23(F)(1), BY INTERVIEWING THE CHILD WITH THE CHILD'S MOTHER PRESENT.

VII.  THE TRIAL COURT JUDGE WALLAR ABUSED HIS DISCRETION IN THAT:  MADE INAPPROPRIATE COMMENTS AND STATEMENTS TO THE CHILD DESIGNED TO IMPROPERLY INFLUENCE HER RESPONSES AND COW HER INTO NOT BEING CANDID AND FORTHRIGHT, WHICH IS THE VERY PURPOSE OF AN IN CAMERA INTERVIEW OF A CHILD.

VIII. THE TRIAL COURT JUDGE WALLAR ABUSED HIS DISCRETION BY FAILING TO PROVIDE A FAIR AND IMPARTIAL HEARING TO THE APPELLANTS BY ANNOUNCING AN INCOMPLETE STATEMENT OF THE LAW OF UNSUITABILITY AND THEN FAILING TO APPLY OR CONSIDER THE PROPER CRITERIA FOR DETERMINING UNSUITABILITY.

IX. THE TRIAL COURT JUDGE WALLAR FAILED TO MAKE PROPER FINDINGS OF FACT AND LAW

REGARDING HIS JUDGEMENT THAT THE APPELLANTS FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT NEITHER PARENT WAS UNSUITABLE, IN THAT, *INTER ALIA,* HE FAILED TO CONSIDER THE FOURTH CRITERIA, UNDER *PERALES* AND *HOCKSTOCK,* THAT AN AWARD OF CUSTODY TO EITHER PARENT WOULD BE DETRIMENTAL TO THE CHILD.

X.  THE TRIAL COURT JUDGE RICHARD M. WALLAR ABUSED HIS DISCRETION IN FAILING TO CONSIDER THE FACT OF THE SHELBY COUNTY PROBATE COURT HAVING APPOINTED APPELLANTS AS GUARDIAN OF THE PERSON OF THE MINOR CHILD AND NOT THE APPELLEE FATHER, TO WHICH PROCEEDINGS, FATHER FAILED TO FILE ANY FORMAL OBJECTON OR APPEAL WHICH HAS THE LEGAL EFFECT OF DETERMINING THAT FATHER IS UNSUITABLE.

**{¶48}** Based on noncompliance with App.R. 16 and the redundancy of arguments made, along with a lack of briefing and citation, we decline to consider Assignments of Error Three through Ten.  As such, those assignments of error are hereby overruled.  Accordingly, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## __JUDGMENT ENTRY__

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellants.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, J.: Concurs in Judgment and Opinion as to Assignments of Error I and II; Concurs in Judgment Only as to Assignments of Error III through X.

Harsha, J. Concurs in Judgment Only.

For the Court,


BY: _____
Matthew W. McFarland, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**